Mario **HERNANDEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12–92–00390–CR.

Court of Appeals of Texas, Tyler.

April 5, 1995.

**490**

Renie McClellan, Cedar Hill, for appellant.

Jeffrey Herrington, Palestine, for appellee.

HOLCOMB, Justice.

A jury found Appellant, Mario Hernandez, guilty of murder and sentenced him to 60

years in prison. In his appeal, he assigns six points of error. We will affirm.

According to the State's evidence, on June 8, 1989, several members of the Vega and Hernandez families were at an athletic complex in Palestine, Texas, watching baseball games. Appellant got into an argument over a baseball cap with Jose Alejandro Vega ("the deceased"). At trial, the deceased's son, Jose Santos Vega ("Jose"), testified that when he had approached the two men during their argument, his father was holding a stick and Appellant was holding a switchblade and a beer. When Jose took the stick from his father, Appellant stabbed Jose's father in the chest. Appellant immediately left in a car and was followed by his brother, Daniel Hernandez ("Daniel"). Jose helped his father into a van to drive him to the hospital. Enroute, Jose attempted to pass Daniel's vehicle and Daniel rammed into Jose's van, which caused the van to run off the road into a ditch. An ambulance finally took Jose's father to the hospital where he was pronounced dead.

In his first point of error, Appellant contends that the trial court erred when it allowed the State to impeach a defense witness by showing that the witness was serving deferred probation on a prior offense. At trial, Appellant called Daniel Hernandez as a witness during the guilt/innocence stage. On cross-examination, the State questioned him as follows:

Q: Okay. Were you involved in an accident on September 14th, 1986, with James Brent Phillips?

A: Yes.

Q: Were you subsequently charged with a felony offense of failure to stop and render aid?

MR. VAN METER: [Defense Counsel] Your Honor, I am going to object to this at this time.

. . . . .

Q: Isn't it a fact that in October you were involved in a collision with one James Phillips?

A: Yes.

Q: Isn't it a fact that Mr. Phillips suffered some fairly serious injuries as a result of that collision?

A: No.

Q: Did he suffer substantial property damage?

A: Could I speak to Hugh Summers?

Q: No.

MR. VAN METER: Your Honor, may we approach the bench?

THE COURT: No sir. Proceed. Answer the question.

A: Could you ask that question again, please?

Q: Did Mr. Phillips suffer some pretty substantial damages as a result of that incident?

A: Well, when I—when that accident happened—when I saw it I got out of my car.

THE COURT: Be responsive to the question, please.

A: If there was a lot of damage to the car?

Q: Yes.

A: Yes. I think so.

Q: Was Mr. Phillips transported to the hospital in an ambulance?

A: Well, after the accident happened, when I got out of the car I got down to see what was going on and what happened. And then I didn't find anybody in the car.

Q: Okay. Did you leave the scene?

A: Well, at first yes. I saw—I didn't see anything. I looked around. I did not see anything. I needed to go talk to my wife, because they were probably going to investigate me. I tried to call someone.

Q: When did you try to call someone?

A: Well, right after the accident—a short time after the accident.

Q: When did you go to the police? Did you leave your vehicle at the scene?

A: Yes.

Q: Was it registered in your name?

A: Yes.

Q: Did you subsequently learn that the police were looking for you?

A: Yes. That's why I went to the police.

. . . . .

PROSECUTOR: Your Honor, at this time the State would offer State's Exhibit Number 12, which is a certified copy of the indictment in Cause Number 19,179, in the Third Judicial District Court of Anderson County; an order deferring further proceedings and placing the defendant on probation and the conditions of probation.

MR. VAN METER: Your Honor, we would like to renew the same objections that we had to this when the jury was out of the presence of the Court.

THE COURT: It's not necessary to repeat them. And, once again, the Court overruled them. The exhibits are admitted.

MR. VAN METER: We also ask to note our exception.

Q: Mr. Hernandez, as a result of that automobile wreck with Mr. James Brent Phillips were you charged with a felony offense of failure to render aid?

A: Well, my lawyer is the one who would know. After that happened I went to the police and reported—presented myself.

Q: Did you subsequently plead guilty to the offense of failure to stop and render aid, and were you placed on probation on the 9th day of March, 1989—three months before this stabbing—for the offense of failure to stop and render aid?

A: Yes. I was accused and I got probation and I paid money. I paid for insurance. And my lawyer is the one who knows more about this than I do.

Q: Did you not plead guilty to the offense?

A: Well, he's the one who knows.

Q: I beg your pardon?

A: The lawyer is the one who knows. I don't really understand.

Q: Are you on felony probation at this time?

A: Yes.

Q: Were you not on felony probation on June 18th, 1989 for the felony offense of failure to stop and render aid?

A: Well, yes, I was under probation, but at the same time I was not the one that hit anybody. They were the ones that hit me.

. . . . .

Q: On June 18th, 1989—the date Mr. Vega was stabbed to death—were you on probation for felony probation for the offense of failure to stop and render aid?

A: Well, I already had probation. I mean, do I have another probation?

Q: Were you on felony probation for the offense of failure to stop and render aid on June 18, 1989?

A: I was on probation since '89.

Appellant objected on the grounds that Daniel had never been convicted of the prior charges of failure to stop and render aid; therefore, any finding of guilt had been deferred and was not proper evidence to be offered.

On appeal, Appellant cites *Soliz v. State*, 809 S.W.2d 257 (Tex.App.—San Antonio 1991, pet. ref'd), wherein the court held that a State's witness could not be impeached by offering evidence that the witness was on deferred adjudication probation for a felony offense. He argues that a witness cannot be impeached under the RULES OF EVIDENCE unless that person has been convicted of a crime. Appellant further points out that the statute dealing with deferred adjudication specifically provides that a person is not convicted of a crime if that individual's probation has been deferred. TEX.CODE CRIM.PROC. ANN. art. 42.12, § 5(a) (Vernon 1995).

The State cites *Paley v. State*, 811 S.W.2d 226 (Tex.App.—Houston [1st Dist.] 1991), in support of its proposition that the State's impeachment of Daniel was proper because the evidence was offered for the purpose of showing bias and motive. However, the circumstances in *Paley* differ from the instant case. In *Paley*, the First Court of Appeals held that *despite* the fact that *the witness was on deferred adjudication*, he could be cross-examined regarding his probationary status because there was evidence that his

testimony would have revealed that he had struck a deal with the State to terminate his probation early. *Paley*, 811 S.W.2d at 229. However, the reasoning used in *Paley* is not applicable to Appellant's case.

■ For the purpose of attacking the credibility of a witness, the court may admit evidence that is offered to prove that the witness has been convicted of a crime, if such evidence is elicited from the witness or established by public record, and the court determines that the probative value of admitting such evidence outweighs any prejudicial effect. TEX.R.CRIM.EVID. 609. Apparently, Daniel was placed on felony deferred adjudication, but he had never been convicted of any offense. We hold that the court erred when it allowed the State to impeach Daniel Hernandez by offering evidence to show that he was serving probation for a deferred adjudication. *Green v. State*, 663 S.W.2d 145, 146 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd).

■ Having found that evidence of Daniel's deferred probation was error, we next determine whether the error was harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2). In determining whether the trial court's error was harmless, we look to *Harris v. State*, 790 S.W.2d 568, 569 (Tex.Cr.App. 1989). According to *Harris*, we should not focus on the outcome of the trial. *Id.* Instead, we focus on the integrity of the process leading to the conviction. *Id.* In doing this, we examine; (1) the source of the error, (2) the nature of the error, (3) whether, or to what extent the error was emphasized by the State, and (4) the probable collateral implications of the error. *Id.* Furthermore, we must determine how much weight a juror might have placed upon the error, and whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* Following these guidelines, we review all of the evidence and focus on the trial process itself. *Id.*

■ Applying the standard set forth in *Harris*, we hold that the knowledge of Daniel's probationary status had no effect on the jury's verdict. Appellant admitted that he stabbed the deceased. Appellant's defense

to the offense of murder was self-defense. Testimony elicited from Daniel concerned events that occurred after the victim was stabbed. Daniel did not see the stabbing so his testimony did not aid, nor did it hinder, Appellant's case. The impermissible impeachment evidence related only to Daniel's credibility concerning his explanation of why he did not stop and render aid to the people in the van that was transporting the dying victim. The prosecutor did not reiterate the impeaching evidence during his closing argument. We hold that the testimony of Daniel Hernandez had no effect on Appellant's defense, and that the evidence was otherwise overwhelming to support Appellant's conviction. Therefore, we conclude, beyond a reasonable doubt, that the impeachment evidence was harmless. Point of error number one is overruled.

In his second point of error, Appellant contends the court erred when it denied him the opportunity to offer evidence to explain the reason that he left the country after he was charged with murder. Through direct examination of their witnesses and cross-examination of defense witnesses, the State presented evidence that Appellant left town immediately after the stabbing occurred. Appellant argues the State implied that Appellant left the country only because he knew that he had committed murder and that he feared prosecution and incarceration. Appellant points out that, in its final argument, the prosecutor stated:

Ask yourself this. If he was not guilty, if he did not commit a vicious act of murder, why did he leave that scene and go to the airport in Dallas/Ft. Worth and catch a flight to Mexico? Is that the act of a man who has just killed someone in self defense? It is not.

He fled on June the 18th. He was returned to Palestine on September 15th under arrest. He did not come back to turn himself in. He did not go up to the border patrol and say, hey, I am wanted in Palestine. Hey, I want to turn myself in. He was not coming to Palestine to turn himself in either.

In a hearing outside the jury's presence, Appellant testified that he had intended to go to the police on June 18, 1989, but instead fled to Mexico because he was afraid of the Vega family and the law enforcement officials in Palestine. He argues that Appellant's brother was killed by Palestine police officers on the same day that Appellant stabbed the deceased.

After Appellant testified about his reasons for going to Mexico, the court made the following ruling:

I will permit him to state that he was afraid to go to the police because he was afraid that they would hurt him. I would not permit him to say what that fear was based on, if you want to go that far and elicit it.

In other words, if he just said "afraid" then that might create the impression that he was afraid of prosecution. But I will permit him to tell the jury he was afraid of the police. He was afraid—rather than just getting prosecuted—that he was going to get hurt by the police, if you want to go that far.

 We hold that the court's ruling was proper. The need to develop all facts in an adversarial system of criminal justice is fundamental and comprehensive. *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Every defendant has a right to present his defensive theory and testimony. *Coleman v. State,* 545 S.W.2d 831 (Tex.Cr.App.1977); *Ginther v. State,* 706 S.W.2d 115, 119 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd). Exclusion of testimony which is crucial to an accused's defense denies his constitutional right to present evidence in support of his defense. UNITED STATES CONSTITUTION Amend. 14; TEXAS CONSTITUTION Art. I, § 10; *Braswell v. Wainwright,* 463 F.2d 1148 (5th Cir.1972). However, the court properly excluded the evidence offered by Appellant in this case because it concluded that the evidence was hearsay. TEX.R.CRIM.EVID. 802. We cannot find any evidence in the record to support Appellant's allegations that his brother was killed by the Palestine police, or the circumstances of his brother's death, or the time of his brother's death; therefore, we cannot tell from the record whether Appellant's brother died prior to Appellant's flight to Mexico.

**494**

We also are concerned about Appellant's argument that the court's failure to allow such evidence denied him a defensive theory. If such evidence had been admitted, the evidence would only have shown the reason that Appellant did not surrender to the police. Accordingly, we hold that the trial court did not abuse its discretion and overrule Appellant's second point of error.

In his third and fourth points of error, Appellant contends that the trial court erred when it allowed the State to improperly impeach Appellant with Appellant's acts of misconduct in Mexico. On direct examination, Appellant was questioned by his defense counsel and stated:

Q: Have you ever had *any other type of problems with the law?*

A: No, sir.

Q: Never been *arrested* here in the State of Texas?

A: No.

Under cross-examination, Appellant had stated that his full name was Mario Quiroz Hernandez and that he came from Villa Hidalgo in San Luis Potosi. Later, the following occurred:

Q: [BY THE STATE] Now, you told Mr. Van Meter you have never been *in trouble?*

A: [APPELLANT] Yes.

Q: That's not true now, is it?

A: Here in United States and everywhere else—I have been in trouble nowhere.

Q: Well, Mr. Hernandez—isn't it a fact that you, Mario Hernandez Quiroz—Q–U–I–R–O–Z—are wanted for the murder of—

MR. VAN METER: I want to object to this because I don't see the proper predicate for the introduction of any of this or for the testimony.

THE COURT: Objection overruled.

Q: [STATE]—*wanted* for the murder of Santiago Escalomte Torres in the village of Villa Hidalgo, San Luis Potosi? Isn't that a fact?

A: No, sir.

Q: —you're not saying that you're not wanted for that murder down there, are you?

A: No sir.

Q: In fact you know you are, don't you?

A: Yes, sir. Because Mr. Van Meter told me here a couple of weeks ago.

Later, on re-direct by defense counsel:

Q: [The Prosecutor] has talked about you being wanted in Mexico. Has anybody ever arrested you for that?

A: No, sir.

Appellant complains that the charge against him in Mexico was not a final conviction, therefore, the State's attempt to impeach Appellant was in violation of Rule 609 of the Texas Rules of Criminal Evidence. We do not agree.

When a witness makes a blanket statement about his past conduct, intending to mislead the jury about prior arrests, convictions, charges, or trouble, the witness may be impeached by prior acts of misconduct. *Prescott v. State,* 744 S.W.2d 128, 131 (Tex.Cr.App.1988); *Ramirez v. State,* 802 S.W.2d 674 (Tex.Cr.App.1990); and *Bell v. State,* 620 S.W.2d 116, 125–26 (Tex.1980).

As stated in *Prescott:*

[I]t is well settled that "an accused puts his character for veracity (as opposed to his moral character) in issue by merely taking the stand, and thus he may be impeached in the same manner as any other witness." *Hammett v. State,* 713 S.W.2d 102, 105 (Tex.Cr.App.1986). As with any other witness, an accused cannot be impeached by a prior offense with which he has been charged unless the charges resulted in a final conviction for either a felony offense or an offense involving moral turpitude, neither of which is too remote. *Ochoa v. State,* 481 S.W.2d 847, 850 (Tex.Cr.App.1972). An exception to this general rule arises when a witness, during direct examination, leaves a false impression as to the extent of either his prior (1) arrests (2) convictions (3) charges or (4) "trouble" with the police.

*Prescott,* 744 S.W.2d at 131. Contrary to Appellant's contention, "charges" as well as

"arrests" are included as exceptions to the general rule.

■ In *Alexander v. State*, 476 S.W.2d 10 (Tex.Cr.App.1972), the defendant was allowed to be impeached when he testified on direct examination that he had "not been in trouble before." This is almost verbatim the statement that Appellant made. Appellant created a false impression about his prior involvement with the law by stating on direct examination that he had not had any "problems" with the law, and by stating, "I have been in trouble nowhere." Appellant opened the door for the State to inquire into any pending criminal charges against Appellant in Mexico. Once Appellant opened the door to other charges pending against him, the State properly inquired about extraneous offenses to correct the false impression that Appellant had created. Points of error three and four are overruled.

In his fifth point of error, Appellant maintains that the trial court erred when it allowed reputation witnesses called by the defense to be cross-examined by "have you heard" questions concerning the murder charges that were pending against Appellant in Mexico. At the punishment stage of the trial, Appellant called three reputation witnesses; Grady Jeanes, Ignacio Vigil, and Travis Henderson. All three witnesses stated that Appellant's reputation for being a peaceable and law abiding citizen was good. On cross-examination, the State asked all three witnesses whether they had heard that Mario Hernandez had been accused of murdering an individual in Villa Hidalgo, San Luis Potosi, Mexico. Appellant objected.

Appellant claims there is no evidence before this Court to validate the State's claim that he is the same person who was named in the warrant in Mexico. He contends that the State failed to provide to the trial court a valid, certified copy of any warrant naming Appellant, and further failed to connect Appellant to the warrant by any identifying marks, photographs, or witness testimony. Appellant further asserts that the State's persistence in bringing such evidence before the jury was clearly calculated to influence the minds of the jury against Appellant. *Rogers v. State*, 725 S.W.2d 350 (Tex.App.—

Houston [1st Dist.] 1987, no pet.). Appellant argues that he was deprived of his right to fundamental fairness and due process of law by the State's actions. Further, he argues that the cumulative effect of the State's line of questioning was so extensive that, even if Appellant had properly preserved his objection on each occasion concerning the murder warrant, it would have been impossible for the jury to properly reach a verdict. We do not agree.

■ "It is axiomatic that when the accused places his reputation in issue through the testimony of a witness, the witness can be impeached on cross-examination with 'have you heard' questions." *Rutledge v. State*, 749 S.W.2d 50, 52–53 (Tex.Cr.App. 1988). In addition, the record reflects that Appellant did not object when the State asked the "have you heard questions of Vigil and Henderson during their cross-examinations. Appellant only objected when Jeanes was asked:

> [H]ave you heard that the defendant is accused of murdering another man in Mexico ...?
>
> [H]ave you heard that the defendant, Mario Hernandez, is accused of murdering a man at Villa Hidalgo, San Luis Potosi, Mexico ...?

A party must object each time inadmissible evidence is offered, and any error in admission of evidence is cured where the same evidence comes in through another witness without objection. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Cr.App.1991); *Hudson v. State*, 675 S.W.2d 507, 511 (Tex.Cr.App. 1984). By failing to object to the prosecutor's questions that were directed to Vigil and Henderson, Appellant has waived any error. Point five is overruled.

■ In his sixth point of error, Appellant asserts that the trial court erred when it allowed the State to place on display Appellant's two brothers, Daniel and Jeronimo Hernandez. Appellant argues that neither Daniel nor Jeronimo were convicted of any offense, and yet the court allowed the State to put them on display before the jury. After Appellant's identity became an issue, the State had three of its witnesses, Jose Vega,

Maria Estrada, and Frederico Salinas, identify Appellant and his brothers. Appellant argues that this procedure "certainly cast [Appellant's brothers] in a criminal light to the jury." By calling Daniel and Jeronimo into the courtroom and displaying them before the jury, the State made it appear as though the two men had been charged with a criminal offense; thereby compromising the credibility of their testimony which was crucial to Appellant's defense. However, Appellant cites no authority to support his argument that the procedure utilized was error. We conclude that the judge did not abuse his discretion in allowing the identification procedure. Point of error six is overruled.

The judgment of the trial court is **affirmed.**