Michael Sean VANN, Appellant,

v.

The STATE of Texas, STATE.

No. 2–06–129–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 8, 2007.

Danny Burns, Fort Worth, for Appellant.

Don Schnebly, District Atty., Edward D. Lewallen, Asst. District Atty., Weatherford, for State.

Panel B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

**OPINION**

TERRIE LIVINGSTON, Justice.

### I. Introduction

Appellant Michael Sean Vann appeals from his conviction and eight-year sentence for evading arrest and detention with a vehicle. In three points, appellant argues that the evidence was legally and factually insufficient to support the verdict and that the trial court erred by sustaining the State's objection to voir dire questions regarding whether potential jurors automatically disbelieved a convicted felon. We reverse and remand for a new trial.

### II. Background Facts

At approximately 12:01 a.m. on April 16, 2005, police officers pulled over a white Nissan for following another car too closely. When the officers turned on their red and blue emergency lights, the driver pulled over to the shoulder and stopped. As the officers prepared to exit their patrol car, the Nissan's driver suddenly pulled back onto the road and accelerated quickly. The officers turned on their lights and sirens and followed the Nissan at speeds ranging from thirty to eighty miles-per-hour.

At some point during the pursuit, the officers observed the female driver, Linda Garrett, exit the driver's seat and climb into the backseat area of the Nissan. The male passenger, appellant, slid over and took control of the car. Appellant continued driving at varying speeds for approximately one and one-half minutes, even though an improved shoulder existed along the roadway. A short time after appellant took the wheel, the officers saw the Nissan's engine "blow" as oil and flames exud-

ed from the car's hood. Eventually, appellant pulled the Nissan over on the shoulder and cooperated with officers from that point on.

A jury found appellant guilty of evading arrest and detention with a motor vehicle, and he appeals from his conviction and eight-year sentence.

## III. Appellant's Voir Dire Question

■ Because appellant's third point stems from the jury voir dire, we address it first. In his third point, appellant complains that the trial court erred by sustaining the State's objection to voir dire questions regarding whether potential jurors automatically disbelieved a convicted felon. The relevant voir dire questioning is as follows:

> [DEFENSE COUNSEL]: Let me ask you, is there anybody here who feels that—you know, if you hear from the witness stand that a witness has a prior felony conviction, that you will automatically disbelieve that witness?
>
> [THE STATE]: Judge, I'm going to object. I think that's an improper question as well.
>
> THE COURT: I'm going to sustain the objection.
>
> [DEFENSE COUNSEL]: Your Honor, if the court would, I had intended, after making the general question, that I would have asked that specific question of each and every juror on the panel if I were allowed. It's my understanding the court is sustaining the objection?
>
> THE COURT: I'll give you a running objection. [3 RR 82–83]

### A. Standard of Review Concerning Voir Dire Questions

■ The trial court has broad discretion over the process of selecting a jury. *Barajas v. State,* 93 S.W.3d 36, 38 (Tex.

Crim.App.2002); *Allridge v. State,* 762 S.W.2d 146, 167 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989). Without this discretion, voir dire could go on forever without reasonable limits. *Faulder v. State,* 745 S.W.2d 327, 334 (Tex.Crim.App.1987), *cert. denied,* 519 U.S. 995, 117 S.Ct. 487, 136 L.Ed.2d 380 (1996). We leave to the trial court's discretion the propriety of a particular question, and the trial court's discretion will not be disturbed absent an abuse of discretion. *Barajas,* 93 S.W.3d at 38; *Allridge,* 762 S.W.2d at 163; *Faulder,* 745 S.W.2d at 334. A trial court abuses its discretion when it prohibits a proper question on a proper area of inquiry. *Barajas,* 93 S.W.3d at 38; *Allridge,* 762 S.W.2d at 163; *Tijerina v. State,* 202 S.W.3d 299, 302 (Tex.App.-Fort Worth 2006, pet. ref'd).

### B. *Standerfer* Analysis

■■ The determination of whether a question propounded to venire members during voir dire is a proper commitment question is a three-part inquiry. *See Standefer v. State,* 59 S.W.3d 177, 182–83 (Tex. Crim.App.2001); *see also Lydia v. State,* 117 S.W.3d 902, 905 (Tex.App.-Fort Worth 2003, pet. ref'd). In *Standefer,* the court of criminal appeals held that a trial court should first determine if a question is a commitment question. 59 S.W.3d at 182–83. A commitment question is one that commits a prospective juror to resolve, or refrain from resolving, an issue a certain way after learning a particular fact. *Id.* at 179. If a question is a commitment question, then the court must decide whether it is nevertheless a proper question. *Id.* at 181–82. For a question to be a proper commitment question, one of the possible answers to the question must give rise to a valid challenge for cause. *Id.* at 182. However, even if a question meets the "challenge for cause" requirement, the inquiry does not end there. *Id.* A proper

commitment question must also contain only those facts necessary to test whether a prospective juror is challengeable for cause. *Id.*

■ Either side may challenge a juror for cause when it can show that the juror is incapable or unfit to serve on the jury. Tex.Code Crim. Proc. Ann. art. 35.16 (Vernon 2006); *Tijerina,* 202 S.W.3d at 302. A juror may be challenged for cause if either side can show "[t]hat the juror has a bias or prejudice in favor of or against the defendant." Tex.Code Crim. Proc. Ann. art. 35.16(a)(9). "A challenge for cause is only proper based on bias if a prospective juror harbors an automatic predisposition toward one view of witness credibility based upon knowledge of a certain fact about the witness." *Harris v. State,* 122 S.W.3d 871, 880 (Tex.App.-Fort Worth, 2003, pet. ref'd). The court of criminal appeals has held that a potential juror may be properly challenged for cause and removed "if he cannot impartially judge the credibility of witnesses." *Ladd v. State,* 3 S.W.3d 547, 560 (Tex.Crim.App.1999), *cert. denied,* 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000). This means that "jurors must be open-minded and persuadeable, with no extreme or absolute positions regarding the credibility of any witness." *Id.*

In this court's original opinion in *Lydia,* we held that the question, "Do each of you feel as though you could evaluate a witness and his testimony and decide if he's being truthful without automatically dismissing his testimony because of some criminal history?" was not a commitment question.[1] *See* 81 S.W.3d 486, 491–92 (Tex.App.-Fort Worth 2002, pet. granted), *vacated,* 109 S.W.3d 495 (Tex.Crim.App.2003). The court of criminal appeals granted Lydia's

petition for discretionary review and held that the question was a commitment question because it "asked whether the prospective juror would resolve the issue of witness credibility based on a particular fact-the witness'[s] criminal history." *Lydia,* 109 S.W.3d at 499. The court of criminal appeals remanded the case to this court for an analysis under the remaining prongs of the *Standefer* test. *Id.* at 500. On remand, we held that the commitment question met the remaining two prongs of *Standefer;* it would lead to a proper challenge for cause based on a juror's bias, and it included only those facts necessary to test whether a prospective juror was challengeable for cause. *Lydia,* 117 S.W.3d at 904–06. Consequently, we held that the trial court did not abuse its discretion by permitting the State to ask this proper commitment question during voir dire. *Id.* at 906.

■ Here, the voir dire question that defense counsel sought to ask is substantially the same as the question the State asked in *Lydia. Lydia,* 109 S.W.3d at 499. Appellant's only witness, Garrett, was a convicted felon, so the defense wanted to know whether potential jurors would automatically disbelieve a witness's (i.e., Garrett's) testimony because of her status as a felon. We see no distinction between the question here, "[I]s there anybody here who feels that ... if you hear from the witness stand that a witness has a prior felony conviction, that you will automatically disbelieve that witness?" and the question in *Lydia,* "Do each of you feel as though you could evaluate a witness and his testimony and decide if he's being truthful without automatically dismissing his testimony because of some criminal

---

1. In *Lydia,* the victim was a convicted felon, so the State wanted to know whether potential jurors would automatically dismiss a witness's (i.e., the victim's) testimony because of the witness's criminal history. 117 S.W.3d at 905.

history?" *Id.* Accordingly, we hold that the question at issue here is a commitment question because it asked prospective jurors whether they would resolve an issue, witness credibility, based solely on a particular fact, that the witness was a convicted felon. *See id.; Tijerina,* 202 S.W.3d at 302.

■ Regarding the second prong of *Standefer,* we conclude the question would lead to a proper challenge for cause under article 35.16(a)(9) based on a juror's bias. *See* Tex.Code Crim. Proc. Ann. art. 35.16(a)(9); *Ladd,* 3 S.W.3d at 560 (holding that a prospective juror may be properly challenged for cause if he cannot impartially judge witness's credibility); *Lydia,* 117 S.W.3d at 905. The State argues that under *Standefer's* second prong, the question at issue would not have led to a proper challenge for cause because the rules of evidence allow a juror to disbelieve a witness on account of her prior felony convictions. *See* Tex.R. Evid. 609(a) ("[f]or purposes of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude"). We agree that a juror may choose to disbelieve any witness once the witness testifies. But if a potential juror states that he would automatically disbelieve a witness who has not yet testified based solely on the witness's status as a felon, that potential juror cannot impartially judge the credibility of the convicted felon witness. *See Tijerina,* 202 S.W.3d at 302. The question posed by defense counsel in voir dire only sought to elicit whether potential jurors had an automatic predisposition to disbelieve a witness who was a convicted felon, and thus, it would have led to a proper challenge for cause. *See id.*

Lastly, we must determine whether the question included only those facts necessary to determine whether a prospective juror was challengeable for cause. *Standefer,* 59 S.W.3d at 182; *Tijerina,* 202 S.W.3d at 302; *Lydia,* 117 S.W.3d at 906. Here, appellant's question only asked whether jurors would automatically disbelieve a witness with a prior felony conviction. We therefore conclude that the question proposed by defense counsel during voir dire was a proper commitment question and satisfied the third prong of *Standefer,* 59 S.W.3d at 182; *Tijerina,* 202 S.W.3d at 302; *Lydia,* 117 S.W.3d at 906. Accordingly, we hold that the trial court abused its discretion by prohibiting defense counsel from asking potential jurors the question. *See Barajas,* 93 S.W.3d at 38; *Allridge,* 762 S.W.2d at 163; *Tijerina,* 202 S.W.3d at 304.

### C. Harm Analysis

■ Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. *See* Tex.R.App. P. 44.2; *Gonzales v. State,* 994 S.W.2d 170, 171 (Tex.Crim.App. 1999) (holding that impermissible exclusion of proper question in voir dire is subject to harm analysis). If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to the appellant's conviction or punishment. Tex.R.App. P. 44.2(a). Otherwise, we apply rule 44.2(b) and disregard the error if it did not affect the appellant's substantial rights. Tex.R.App. P. 44.2(b); *see Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim. App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Coggeshall v. State,* 961 S.W.2d 639, 642–43 (Tex.App.-Fort Worth 1998, pet. ref'd).

■ Appellant's complaint is governed by rule 44.2(b). *See* Tex.R.App. P. 44.2(b); *Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim.App.2005); *Tijerina*, 202 S.W.3d at 304. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Coggeshall*, 961 S.W.2d at 643.

■ In making this determination, we review the record as a whole. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). Appellant was prevented from asking a proper commitment question during voir dire and was thereby prevented from challenging for cause any jurors harboring an automatic disbelief of testimony given by a convicted felon. *See* Tex.Code Crim. Proc. Ann. art. 35.16(a)(9); *Tijerina*, 202 S.W.3d at 305. Consequently, appellant was prevented from learning whether potential jurors could impartially judge the credibility of his only witness, Garrett, a convicted felon. *See Ladd*, 3 S.W.3d at 560; *Tijerina*, 202 S.W.3d at 305. Appellant had a constitutional right to call witnesses and offer evidence on his own behalf. Tex. Const. art. 1, § 10; *see Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967); *Brazelton v. State*, 947 S.W.2d 644, 650 (Tex.App.-Fort Worth 1997, no pet.); *Hernandez v. State*, 897 S.W.2d 488, 493 (Tex. App.-Tyler 1995, no pet.). Appellant also had a constitutional right to an impartial jury. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see also Sanchez v. State*, 165 S.W.3d 707, 710–11 (Tex.Crim. App.2005) (noting that the first purpose of voir dire is to establish a basis for a challenge for cause when a potential juror is legally disqualified or is biased or prejudiced for or against one of the parties or the relevant law); *Gonzales v. State*, 2 S.W.3d 600, 603 (Tex.App.-Texarkana 1999, pet. ref'd) ("Part of [the right to an impartial jury and assistance of counsel] is an adequate voir dire to identify unqualified jurors.").

■ The burden to demonstrate harm does not rest on appellant or the State; it is our responsibility as an appellate court to review the record and assess harm. *See Johnson v. State*, 43 S.W.3d 1, 4–6 (Tex. Crim.App.2001); *see also Ovalle v. State*, 13 S.W.3d 774, 787 (Tex.Crim.App.2000). But we cannot predict how defense counsel would have conducted the trial differently had he not been precluded from asking the proper voir dire question at issue here. *See Gonzales*, 2 S.W.3d at 606.

Here, it is entirely possible, even likely, that voir dire members who automatically disbelieved witnesses with prior felony convictions served on appellant's jury. The harm from the trial court's error is that appellant was precluded from making an intelligent decision about whether to exercise the substantial right that he possesses to call a witness on his behalf to testify in front of an impartial jury. *See Jones v. State*, 982 S.W.2d 386, 393 (Tex. Crim.App.1998) (noting that "[t]he defendant's only substantial right [in the context of jury selection] is that the jurors who do serve be qualified," not to have a particular person serve on a jury). Because appellant's only witness was Garrett, a convicted felon, some or all of the jurors could have automatically dismissed everything she testified to. Regardless, appellant called Garrett to testify on his behalf. During her testimony, Garrett contradicted the State's witnesses' testimonies regarding the distance and the length of time that appellant drove the Nissan before stopping. These factors were critical to the jury's determination of appellant's guilt.

We conclude that in the context of the entire case against appellant, the character of the trial court's error in prohibiting defense counsel from asking this question is such that it had a significant or injurious effect on the jury's verdict so that appellant's substantial rights—specifically, his rights to a fair and impartial jury and to make an intelligent decision on whether to call or not call a witness—were affected. *See Tijerina,* 202 S.W.3d at 306. Accordingly, we sustain appellant's third point.

## IV. Appellant's Legal Sufficiency Challenge

In his first point, appellant challenges the legal sufficiency of the verdict. We address this point because it could potentially provide appellant with greater relief than his third point.[2]

### A. Standard of Review

 In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Hampton v. State,* 165 S.W.3d 691, 693 (Tex.Crim.App.2005).

### B. Discussion

 A person violates section 38.04 of the penal code if he intentionally flees from a police officer attempting lawfully to arrest or detain him. TEX. PENAL CODE ANN. § 38.04 (Vernon 2003).

Appellant argues that the evidence is insufficient to support his conviction because the State failed to show that the police officers attempted to arrest him; instead, appellant argues, the evidence only showed that the officers were attempting to arrest Garrett. Therefore, according to appellant, the State did not satisfy all of the elements of penal code section 38.04. *See* TEX. PENAL CODE ANN. § 38.04. We disagree.

During trial, Officer Kevin Salters testified that he saw a white Nissan following another car too closely. Officer Salters immediately activated his patrol car's red and blue emergency lights and stopped the Nissan. When he pulled the Nissan over, Officer Salters saw that the driver was a female and the passenger was a male. Deputy Chris Hudson was on duty with Officer Salters on April 16, 2005. Deputy Hudson confirmed that Garrett was driving the Nissan when they initially pulled it over for following another car too closely. Neither party disputes that the initial detention of Garrett was lawful. Appellant asserts, however, that because he was simply a passenger, the officers never sought to arrest or detain *him.*

 When police officers stop and lawfully detain a driver for committing a traffic offense, all passengers inside the driver's vehicle are also detained. *Josey v. State,* 981 S.W.2d 831, 837–38 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). Moreover, passengers in an automobile are subject to temporary investigative detentions in the same manner as pedestrians. *Rhodes v. State,* 945 S.W.2d 115, 117 (Tex. Crim.App.), *cert. denied,* 522 U.S. 894, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997); *see also*

---

2. Because a finding of legal insufficiency results in an affirmative judgment in the appellant's favor rather than vacation of the judgment against him, a successful legal sufficiency issue would provide somewhat greater relief to the appellant. *See Edmonson v. State,* 951 S.W.2d 6, 6 (Tex.Crim.App. 1997); *Roberson v. State,* 810 S.W.2d 224, 225 (Tex.Crim.App.1991).

*Maryland v. Wilson*, 519 U.S. 408, 412–14, 117 S.Ct. 882, 885–86, 137 L.Ed.2d 41 (1997) (holding that as a practical matter, any passengers are stopped when their driver is stopped for committing a traffic offense). Here, by stopping Garrett, the police officers detained both Garrett, the driver, and appellant, the passenger. *See Rhodes*, 945 S.W.2d at 117.

Therefore, we must next consider whether the evidence is legally sufficient to support the verdict that appellant, as a detainee, evaded arrest. After the officers pulled the Nissan over, Garrett slowed down on the shoulder of the road to a stop. When the officers got out of their patrol car, Garrett almost immediately pulled the Nissan back onto the road and accelerated away from the officers. At this point, the officers returned to their patrol car, turned on their emergency lights and sirens, and followed the Nissan. The officers testified that Garrett drove between thirty miles-per-hour and eighty miles-per-hour in a sixty-mile-per-hour zone for approximately two to three miles. Approximately half way through the pursuit, the officers saw Garrett climb from the driver's seat into the back seat and saw appellant slide over into the driver's seat and take control of the Nissan. Almost immediately after appellant took control, the officers saw the Nissan's engine "blow." Oil and other fluids from the Nissan splattered onto the officers' patrol car. One or two minutes later, appellant pulled the Nissan over to the shoulder of the road and cooperated with the police officers from that point on.

Both officers testified that the chase lasted approximately five miles. Further, Officer Salter testified that appellant took control of the Nissan at the half way point in the chase, drove for a couple of miles, and pulled over after driving for a minute or two. Deputy Hudson testified that appellant did not stop the Nissan until one or two minutes after he gained control of it, even though an improved shoulder existed throughout the entire route.

Appellant argues that "no normal person would [be] cool, reflective, and immediately rational" after being forced to take the wheel of a moving car with a blown engine. While this may be true, it seems equally irrational for a person to continue driving away from police officers for at least a mile when the officers have already been chasing the car for approximately two miles. The evidence here shows that appellant knew the officers were trying to detain him and Garrett but continued to flee for one or two miles after taking control of the Nissan. We conclude that the evidence is legally sufficient to support the jury's verdict that appellant fled from police officers who were legally attempting to detain him. *See* TEX. PENAL CODE ANN. § 38.04; *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Hampton*, 165 S.W.3d at 693. Accordingly, we overrule appellant's first point.

## V. Appellant's Factual Sufficiency Challenge

We need not consider appellant's second point, which raises a factual sufficiency challenge because, unlike his legal sufficiency challenge, this point would not entitle him to an acquittal instead of remand. Thus, the factual sufficiency resolution is not "necessary to final disposition of the appeal." *See* TEX.R.APP. P. 47.1; *Freeman v. State*, 985 S.W.2d 588, 590 (Tex.App.-Beaumont 1999, pet. ref'd).

## VI. Conclusion

Having sustained appellant's third point and overruled his first point, we reverse the trial court's judgment and remand for new trial.