COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-07-439-CR

 

 

JODY SHANE MEADOR                                                        APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

               FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------

Appellant Jody Shane Meador appeals his
conviction and one-year sentence for evading arrest.  In two issues, he contends that his state and
federal constitutional rights were violated when the State violated the trial
court=s
discovery order by withholding evidence and that the evidence is legally and
factually insufficient to support his conviction.  We affirm.








Sufficiency
of the Evidence

The
State charged appellant with evading arrest after he was chased by a Texas
Department of Public Safety trooper and at least one Gainesville police officer
while speeding on his motorcycle.  In his
second issue, appellant challenges the legal and factual sufficiency of the
evidence to support his conviction.[2]  

A.     Standards of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all the evidence in the light most favorable to the prosecution in order
to determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).








When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Watson v. State, 204 S.W.3d 404, 414
(Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex.
Crim. App. 2005).  We then ask whether
the evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s determination is manifestly
unjust.  Watson, 204 S.W.3d at 414B15, 417;
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In
determining whether the evidence is factually insufficient to support a
conviction that is nevertheless supported by legally sufficient evidence, it is
not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, we must give due deference to the
fact-finder=s determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

An
opinion addressing factual sufficiency must include a discussion of the most
important and relevant evidence that supports the appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.      Applicable Facts

While on duty in the Gainesville
area, around midnight on November 3, 2005, Texas Department of Public Safety
Trooper Barrett Brown noticed a vehicle with a single headlight traveling
northbound on Interstate 35 at eighty-six miles/hour in a sixty-five mile/hour
zone.  Trooper Brown was sitting in a Amarked
black and white Texas state trooper car,@ which
he had parked on the service road near an entrance ramp so that he could run
radar.  As the vehicle passed, Trooper Brown
saw that it was a motorcycle.  Trooper
Brown then turned his car around and started to follow the motorcycle on the
highway, but he did not turn on his car=s
headlights.  According to Trooper Brown,
he did not want the driver of the motorcycle to see him and Atake off
going around the curve@ until he increased his
speed.  Once Trooper Brown was able to
speed up, he turned on his car=s
headlights.  








Trooper Brown testified that he believed the
driver of the motorcycle had seen him enter the highway and that the driver
then accelerated to one hundred thirty-six miles/hour in a sixty-five mile/hour
zone.  After Trooper Brown turned on his
car=s
headlights, the driver of the motorcycle exited the highway at the North Grand
exit.  Trooper Brown testified that at
that point he caught up to the motorcycle and activated his car=s
overhead emergency lights and Awigwags,@ the
flashing white lights on the front of the car.[3]  He saw the driver of the motorcycle turn
right and back southbound while running the stop sign at the intersection of
the service road and North Grand;[4]
the driver then accelerated Aup to
140 miles an hour.@[5]  








Trooper Brown then saw the motorcycle drive Aup and
around by the school and down by the gas station of Wal-Mart.@  At that point, Officer Proffer, a Gainesville
police officer who was traveling northbound on North Grand, saw the motorcycle
and turned around to follow it.  That
officer turned his overhead lights and wigwags on and got in front of Trooper
Brown; the driver of the motorcycle then turned left (eastbound) on Highway 82,
running the stop sign at that intersection as he did so.  He then accelerated Ato a
high rate of speed@ but finally stopped when he
missed a curve and wrecked the motorcycle. 
Trooper Brown was able to maintain visual contact of the motorcycle the
entire time he was following it.  

After the motorcycle crashed, CareFlite took the
driver to the hospital.  Officers
searched the motorcycle and in a fanny pack found identification with appellant=s name
on it and a small amount of white powder that field-tested positive as
methamphetamine.[6]    








Trooper Brown identified the driver of the
motorcycle as appellant.  According to
Trooper Brown, he determined that appellant lived in Whitesboro, and that a Anormal
person going to Whitesboro@ would
not have exited on North Grand and driven southbound to Highway 82 but would
instead have taken the Highway 82 exit directly off of I-35, two exits before
the North Grand exit.  Trooper Brown
agreed that instead of taking this exit, appellant sped up dramatically and
then drove down two more exits to North Grand. 
He testified that a person fleeing police on a motorcycle might want to
avoid that part of Highway 82 because the Gainesville Police Department
building was located a half block off Highway 82 and the driver was more likely
to be stopped in that area because of a higher concentration of police. 

When asked if he had his sirens on while
following the motorcycle, Trooper Brown testified, AI
believe so.  Yes, ma=am.@  But he did not know if the other officer had
his sirens on.  

During Trooper Brown=s
testimony, the jury viewed a videotape (without the audio portion) taken by a
recorder in Officer Proffer=s
vehicle.  The video starts as appellant,
with the officer behind him, is approaching Highway 82.  The patrol car=s blue
and red overhead lights are visible. 
Appellant can be seen braking as he approaches the intersection of North
Grand and Highway 82 and then accelerating through the stop sign in a left turn
onto the highway.  Appellant then appears
to accelerate through the turn until he disappears from the camera=s view
as Officer Proffer turns his patrol car. 
When appellant reappears in the camera=s view,
he is driving straight on Highway 82, and the brake lights of the motorcycle
are not on.  Appellant then brakes again
at the approach to the almost ninety-degree curve; at that point, he crashes
the motorcycle. 








On cross-examination, Trooper Brown testified
that Officer Proffer=s emergency overhead lights were
already on when appellant passed him on the motorcycle.  He agreed that an in-car video camera starts
recording when the overhead lights are activated, but he also said that there
is an eight to twelve second delay.[7]    

Appellant testified that when Trooper Brown
spotted him, he was Aprobably going too fast@ because
he had just recovered the motorcycle from the residence of a friend who had
stolen it from him.  He thought someone
could be chasing him.  He was on I-35
headed to his girlfriend=s house but changed his mind and
turned around to go back home.  He also
said that he took the North Grand exit instead of the Highway 82 exit because A[a]nybody
that rides a motorcycle don=t want
to go through the middle of town because they=ve got
to stop, put down their feet, so much extra. 
You stay on the highway, straight shot.@  Appellant said that he never saw any officers
behind him and that he kept his eyes only on the road in front of him because
he was going so fast.








According to appellant, he never saw a police car
until he encountered Officer Proffer driving in the opposite direction on North
Grand, at which point he Awent slamming on the brakes in
order to avoid a ticket.@ 
He said the officer did not have his lights on when he passed him.  However, appellant must have seen Officer
Proffer slow down to turn because he also said, ATo me,
it was just a normal vehicle turning to the left.  And I thought I=d shut
my bike down fast enough.@ 
According to appellant, he saw a flicker of blue or red light in the
corner of his eye when he turned left on Highway 82, and he crashed on the
curve when he turned around to see if he was being followed.  That was the first time he knew officers were
trying to stop him.  Appellant testified
that he never intentionally evaded arrest. 
He also testified that his driver=s
license was in the fanny pack on the motorcycle when his friend stole it but
the drugs were not. 

On cross-examination, appellant agreed when the
prosecutor asked him if it was just coincidence or A[p]erhaps
a turn@ that
caused him to increase his speed from eighty-six miles/hour to one-hundred
forty miles/hour after he initially passed Trooper Brown on I-35.  








C.     Analysis

A person commits an offense if
he intentionally flees from a person he knows is a peace officer attempting
lawfully to arrest or detain him.  Tex.
Penal Code Ann. ' 38.04(a) (Vernon 2003); Vann
v. State, 216 S.W.3d 881, 888 (Tex. App.CFort
Worth 2007, no pet.).  Therefore, the
evidence must show that the accused knew that a peace officer was attempting to
arrest or detain him.  Jackson v.
State, 718 S.W.2d 724, 726 (Tex. Crim. App. 1986).

Appellant claims that the evidence shows that Aat no
time [was he] intentionally fleeing [Trooper] Brown and at no time was he on
notice of an imminent arrest or detention.@  According to appellant, the evidence supports
his version of eventsCthat he did not see any police
officer following him until he turned around before crashing at the curve on
Highway 82.








However, appellant=s
testimony conflicts with Trooper Brown=s
testimony and the videotape viewed by the jury. 
Trooper Brown testified that appellant increased his speed significantly
after he initially passed Trooper Brown; thus, although Trooper Brown was not
attempting to detain appellant at that time, the evidence shows that appellant
was aware of a police officer=s
presence.  Appellant admitted he was
aware that Officer Proffer was turning as appellant passed by him on North
Grand; the videotape shows that the officer was not far behind appellant when
appellant braked and ran the stop sign at Highway 82 while turning left onto
the highway.  This evidence casts doubt
on appellant=s explanation that he Aslammed@ on the
brakes after seeing Officer Proffer to avoid a ticket.  The jury was entitled to question why
appellant would reduce his speed, only to then run a stop sign immediately
afterward.  The lights from Officer
Proffer=s patrol
car are clearly visible in the videotape as he is following appellant.  In addition, although appellant can be seen
braking before running the stop sign at Highway 82, he does not appear to have Aslammed@ on his
brakes.

We must defer to the jury=s
resolution of conflicts in the evidence; thus, we conclude and hold that the
evidence is both legally and factually sufficient to support appellant=s
conviction for evading arrest.  See
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); Matson
v. State,  819 S.W.2d 839, 846 (Tex.
Crim. App. 1991).  We overrule appellant=s second
issue.

Whether
State Improperly Failed to Disclose Evidence

In his first issue, appellant
contends that the State improperly suppressed the videorecording from Trooper
Brown=s in-car
camera, violating his rights to due course of law under the Texas Constitution
and due process under the United States Constitution.








A.     Applicable Facts

Before trial began on July 24,
2007, the day after voir dire, appellant=s trial
counsel told the judge that the State had informed him the day before (but
after voir dire) that the State

had a videotape that had
never been turned over to the Defense . . . [and] that their
office had erased most - - the relevant parts of that videotape before the . .
. trial.  And, of course, she just found
out about it, I think, I believe, and she can speak for herself, but I believe
she found out about that yesterday but we were never produced that - - that
item, which, of course, could have Brady material and exculpatory material on
it . . . .  

 

Appellant=s counsel asked, AJudge, I=m going
to need some time to examine those items at least sometime during the trial, at
the very least in order to be able to present my defense adequately because [of]
these discovery violations by the District Attorney=s
office.@  The prosecutor replied that she had given the
video to support staff and told that person to copy it; instead, that person
erased the video.  In response to the
trial court=s questioning, appellant=s
counsel testified that he wanted to see the partial video and question Trooper
Brown about it after the State rested.  








Before trial began the next day, appellant=s trial
counsel told the trial court that he had been able to view the partial
video.  He moved that the case be
dismissed for violation of appellant=s rights
to due course of law and due process as a result of the State=s
blatant violation of discovery orders. 
Appellant=s counsel told the court that
the only reason he was not asking for a mistrial was because his client did not
want one; he had been in jail waiting for trial for over six months.  Counsel also declined to request a continuance.


During trial, appellant=s
counsel called District Attorney Investigator Brand Webb as a witness.  Investigator Webb testified that on the
Monday before trial, the prosecutor gave him a videotape to copy.  He did not know what was on the videotape
until later when he learned that it was the videotape from Trooper Brown=s patrol
car.  However, Investigator Webb further
testified that when he attempted to copy the videotape, he accidentally
reversed the tapes; he put the original where the copy should go and the copy
where the original should go.  He agreed
that as a result of the erasure, the jury would not be able to view a videotape
from Trooper Brown=s vehicle.  

B.      Analysis








Under Brady v. Maryland,[8]
to ensure the accused a fair trial, a prosecutor has an affirmative duty under
the Due Process Clause of the Fourteenth Amendment to turn over to the accused
all exculpatory or impeachment evidence, irrespective of the good faith or bad
faith of the prosecution, which is favorable to the defendant and is material
to either guilt or punishment.  Kyles
v. Whitley, 514 U.S. 419, 432B33, 115
S. Ct. 1555, 1565 (1995); United States v. Bagley, 473 U.S. 667, 674,
105 S. Ct. 3375, 3379 (1985); Franks v. State, 90 S.W.3d 771, 796 (Tex.
App.CFort
Worth 2002, no pet.).  A due process
violation occurs if (1) the prosecutor fails to disclose evidence that is (2)
favorable to the defendant and (3) material. 
Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); Franks,
90 S.W.3d at 796.

However, in a case in which the State fails to
preserve evidence that may have been useful to an appellant, we apply a
different test.  Williams v. State,
906 S.W.2d 58, 61 (Tex. App.CTyler
1995, pet. ref=d).  The failure to preserve potentially useful
evidence is not a denial of due process unless a criminal defendant can show
bad faith.  Arizona v. Youngblood,
488 U.S. 51, 58, 109 S. Ct. 333, 337 (1988); Thomas v. State, 841 S.W.2d
399, 402 n.5 (Tex. Crim. App. 1992); Jackson v. State, 50 S.W.3d 579,
589 (Tex. App.CFort Worth 2001, pets. ref=d); Williams,
906 S.W.2d at 61.








Here, there is no evidence that the destruction
of the videotape was the result of bad faith. 
Investigator Webb testified before the jury that the prosecutor had
asked him to copy the tape so that it could be produced to the defense, but he
accidentally erased the tape instead. 
After he confirmed that the erasure was accidental, appellant did not
ask any further questions.  Appellant did
not contend at trial and does not contend on appeal that the erasure of the
videotape was the result of bad faith. 
Accordingly, we conclude and hold that appellant did not show bad faith
such that he is entitled to relief.  See
Jackson, 50 S.W.3d at 589; Williams, 906 S.W.2d at 61.  We overrule his first issue.

Conclusion

Having overruled both of appellant=s
issues, we affirm the trial court=s
judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  CAYCE, C.J.; LIVINGSTON
and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  October 16, 2008











[1]See Tex. R. App. P. 47.4.





[2]Because we discuss the
factual background in detail in our analysis of this issue, we address it
first.





[3]Trooper Brown admitted on
cross-examination that he had followed the motorcycle for approximately four
miles before turning on the car=s overhead lights. 





[4]Although North Grand
intersects the northbound and southbound I-35 service road, it does so on the
diagonal, so that it runs northbound and southbound as well.  





[5]According to Trooper
Brown, he turned on his car=s emergency overhead lights after appellant ran
the stop sign but while Trooper Brown was still driving on the exit ramp about
six to eight car lengths behind. 





[6]The powder later tested
out at the lab to be less than one gram of methamphetamine.  Although the State also charged appellant
with possession, it later dismissed that part of the indictment because the
jury could not agree on a verdict.





[7]Although in his brief,
appellant dismisses this testimony as Aridiculous,@ there is no evidence to rebut it other than his
cross-examination of Trooper Brown.





[8]373 U.S. 83, 83 S. Ct.
1194 (1963).