Opinion issued July 15, 2010.



In The

Court of
Appeals

For The

First District
of Texas

———————————

NO. 01-09-00147-CR

———————————

RANDY THOMAS MCGHEE, Appellant

V.

THE STATE OF
TEXAS, Appellee



 



On Appeal from the 300th District Court  

Brazoria County, Texas



Trial Court Case No. 54,657



 

MEMORANDUM OPINION

A jury
found appellant, Randy Thomas McGhee, guilty of murder and assessed punishment
at 99 years’ confinement.  In six points
of error, appellant contends the trial court erred in (1) allowing the State to
ask an improper commitment question during voir dire; (2) refusing to permit
evidence concerning the complainant’s use of marijuana because the trial court
found it to be irrelevant; (3) admitting a crime scene photograph; (4)
admonishing appellant to respond to yes-or-no questions with a “yes” or “no” answer;
(5) refusing to permit expert testimony regarding whether appellant was a
“person of ordinary temper”; and (6) refusing to permit expert testimony
regarding whether appellant “snapped” when he killed the complainant.  We affirm.

BACKGROUND

Appellant and his ex-wife, Nancy,
the complainant, had been divorced for approximately 10 years, but their
relationship remained cordial.  Nancy had
been having car trouble, and appellant went to her house several times during
the week of July 16, 2007, to help her fix it. 
He eventually spent approximately $1,500 to have Nancy’s car fixed.  While her car was in the shop, appellant
stayed with Nancy so that she could drive his car to work.  Appellant claimed that during this time, his
relationship with Nancy again became romantic. 
However, as they spent time together, they began to renew old arguments.

One night Nancy began to complain
about the fact that her car was still not working and about appellant’s staying
at her house. Appellant claimed that Nancy was high on marijuana at the time
and that she told him that if she could get away with it, she would shoot
him.  After arguing for about 45 minutes,
Nancy went to bed.

Appellant claimed that Nancy did
not appreciate what he had done to help her. 
He stated that he “just snapped” and went outside to his car to get his
gun.  He then went into Nancy’s bedroom
and shot her three times in the face as she lay in bed.  Her body was discovered three days later when
she failed to show up for work. 
Toxicology reports showed no marijuana in her system at the time of
death.

At trial, appellant did not deny
shooting Nancy, but claimed that he did so under the immediate influence of
sudden passion arising from adequate cause. 
The jury rejected this special issue.

VOIR DIRE

In point of error one, appellant
contends that the trial court abused its discretion when, during voir dire, it
permitted the State “to commit the venire to refrain from using the victim’s
use of marijuana against the State.”

During voir dire, the following exchange
took place:

[Prosecutor]:  There may be evidence in this case that . . .
the victim may have used marijuana.  She
might have in her life used marijuana. 
Is anybody going to hold that as a circumstance tending to influence . .
.

 

[Defense Counsel]:  Judge, that’s a commitment question.  We’ll object.

 

[Trial Court]:  Ask your question again.

 

[Prosecutor]:  There are—there may be evidence that a
person who—the victim in this case may have used marijuana or you
may hear evidence about marijuana use or drug use, illegal drug use.  Does anybody think you’re going to hold that
as a circumstance against the defendant if you hear about illegal drug use on
his part or against the State if you hear about illegal drug use on the part of
a victim or a witness?

 

[Defense counsel]:  And we object to it.  It’s a commitment question.

 

[Trial Court]:  Overruled. 
Ask as you just asked it and it can be answered.

 

[Prosecutor]:  So, I hope y’all remember how I just asked
it.  You may hear evidence that the
victim or the defendant or another witness used illegal drugs.  If you do hear such evidence, will you be
able—will you hold that as a circumstance against the person that you hear
about using illegal drugs, be it the defendant or a witness or the victim?

 

Standard of Review and Applicable Law

The trial court has broad discretion over the process of
selecting a jury. Allridge v. State, 762 S.W.2d 146, 167 (Tex. Crim. App.
1988); Ewing v. State, 157 S.W.3d 863, 866 (Tex. App.—Fort Worth 2005,
no pet.). The propriety of a particular voir dire question is reviewed under an
abuse-of-discretion standard. Barajas v. State, 93 S.W.3d 36, 38 (Tex. Crim.
App. 2002); Allridge, 762 S.W.2d at 167; Vann v. State, 216
S.W.3d 881, 884 (Tex. App.—Fort Worth 2007, no pet.).

A commitment
question is one that commits a prospective juror to
resolve, or to refrain from resolving, an issue a certain way after learning a
particular fact. Standefer v. State, 59 S.W.3d 177, 179 (Tex. Crim. App.
2001). It is generally improper to ask a commitment question during voir dire because it amounts to an improper
attempt to bind a juror. Lydia v. State, 117 S.W.3d 902, 905 (Tex. App.—Fort
Worth 2003, pet. ref’d). But some commitment questions are proper. Id.; see Standefer, 59 S.W.3d
at 181–83.

For instance, counsel may ask
prospective jurors whether they can follow the law when it requires a certain
type of commitment from jurors and when the question states only the facts
required to establish a challenge for cause. Standefer, 59 S.W.3d at 181–82
(illustrating that counsel may ask jurors whether they can consider community
supervision when law requires jurors to consider full range of punishment); Vann,
216 S.W.3d at 884–85. However, when “the law does not require the commitment, a
commitment question is invariably
improper.” Standefer, 59 S.W.3d at 181.



Thus, the determination of whether a question is an improper
commitment question is a three-part
test: (1) is the question a commitment question;
(2) could a possible answer to the question produce a valid challenge for cause
because it would show that a juror would not follow the law; and (3) does the
question only contain the facts required to make such a challenge. See id. at 182–83; Tijerina v. State,
202 S.W.3d 299, 302 (Tex. App.—Fort Worth 2006, pet. ref’d) (op. on reh’g).
“[T]he purpose for prohibiting improper commitment questions by either the State or the defendant is to ensure
that the jury will listen to the evidence with an open mind—a mind that is
impartial and without bias or prejudice—and render a verdict based upon that
evidence.” Sanchez v. State, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005).

          Attempting to determine whether a
potential juror would automatically be biased against a witness who has a
criminal history is a commitment question. 
Lydia v. State, 109 S.W.3d
495, 499 (Tex. Crim. App. 2003). 
Similarly, attempting to determine whether a potential juror would
automatically be biased against a drug user is also a commitment question.

Analysis

          Thus, we must decide whether a
possible answer to the question would possibly result in a challenge for
cause.  A prospective juror may be
properly challenged for cause and removed “if he cannot impartially judge the
credibility of a witness.”  Ladd v. State, 3 S.W.3d 547, 560 (Tex.
Crim. App. 1999).  Potential jurors “must
be open-minded and persuadable, with no extreme or absolute positions regarding
the credibility of any witness.” Id.
By asking questions about witnesses’ drug use, the State was trying to learn if
any jurors had “extreme or absolute positions regarding the credibility of any
witness” based on the witness’s drug use. 
Id.  We conclude that the questions about witness
drug use could lead to a proper challenge for cause under article 35.16(a)(9) based
on a juror’s bias.  See Tex. Code Crim. Proc.
Ann. art.  35.16(a)(9) (Vernon
2006); Ladd, 3 S.W.3d at 560 (holding
that prospective juror may be properly challenged for cause if juror cannot
impartially judge witness’s credibility).

          Finally, we consider whether the
question included only those facts necessary to test whether the juror was challengeable
for cause.  Lydia, 117 S.W.3d at 904–06. 
The State concedes that “[t]he question in the instant case would have
been a proper commitment question but that it supplied additional facts beyond
what was necessary to sustain a challenge for cause.”  Specifically, we note that the question
points out that the drug user in question was the complainant and that she may
have smoked marijuana.  When a question
provides more facts than are necessary to establish a challenge for cause, the
trial court should not allow the question.  Standefer, 59 S.W.3d at 183.

Harm

          Because the State concedes that the
trial court should not have permitted the question, we turn to the issue of
harm.  In Sanchez v. State, the court addressed the issue of conducting a
harm analysis after the State has been permitted to ask an improper commitment
question as follows:

Under Rule 44.2(b), reviewing courts should assess the
potential harm of the State’s improper commitment questioning by focusing upon
whether a biased juror—one who had explicitly or implicitly promised to
prejudge some aspect of the case because of the State’s improper questioning—actually
sat on the jury. The ultimate harm question is: was the defendant tried by an
impartial jury, or, conversely, was the jury or any specific juror “poisoned”
by the State’s improper commitment questions on a legal issue or fact that was
important to the determination of the verdict or sentence?

 

Sanchez, 165 S.W.3d at 713.  The court then listed several, nonexclusive
factors that may be considered, including (1) whether the question was
unambiguously improper and attempted to commit the venire to a specific course
of action; (2) how many on the venire agreed to commit themselves to a specific
course of action if the State produced certain evidence; (3) whether the
members of the venire who committed themselves actually served on the jury; (4)
whether the defendant used peremptory challenges to eliminate the venire
members who had committed themselves; (5) whether the defendant exhausted his
peremptory challenges on those venire members and requested more; (6) whether the
defendant timely asserted that a named objectionable venire member actually
served on the jury because he had to use strikes on the committed jurors; and
(7) whether there is a reasonable likelihood that the jury’s verdict or course
of action in reaching a verdict was substantially affected by the State’s
improper commitment questioning.  Id. at 714.

          In appellant’s brief, he fails to
address any of these factors or to make any argument about how he was harmed by
the State’s questioning. None of the prospective jurors who responded to the
State’s question was selected to serve on the jury, and appellant makes no
claim that he struck these jurors because of their response to the commitment
question.  Because appellant has failed
to show harm, we overrule point of error one.

EXCLUSION OF EVIDENCE

In point of error two, appellant
contends that the trial court erred when it prohibited appellant from
questioning his daughter about her mother’s use of marijuana.

At trial, the State introduced
appellant’s confession, in which he stated that at the time of the offense, the
complainant was “high on grass as usual.”  
Later on, the State introduced toxicology reports on the complainant
showing that there was no marijuana in her system at the time of her death. Appellant
concedes that a complainant’s prior drug use is usually irrelevant but argues
that the State made the issue relevant by using the toxicology report to attack
appellant’s credibility. 

Standard
of Review and Applicable Law

We review the trial court’s exclusion of evidence using an abuse-of-discretion
standard. Apolinar v. State, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005);
Webb v. State, 991 S.W.2d 408, 418 (Tex. App.—Houston [14th Dist.] 1999,
pet. ref’d). A trial court’s ruling on the admissibility
of evidence will be upheld if the record reasonably supports the ruling. Willover
v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).  The trial court’s rulings should be sustained
on appeal if correct on any theory of law applicable to the case. Weatherred
v. State, 975 S.W.2d 323, 323 (Tex. Crim. App. 1998). As long as the trial
court’s ruling was within the zone of reasonable disagreement, the decision
will be upheld. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1990).

“‘Relevant evidence’ means evidence having any tendency to
make the existence of any fact that is of consequence to the determination of
the action more probable or less probable than it would be without the
evidence.” Tex. R. Evid. 401.
“Evidence which is not relevant is inadmissible.” Tex. R. Evid. 402. “It is important, when determining whether
evidence is relevant, that courts examine the purpose for which the evidence is
being introduced.” Layton v. State, 280 S.W.3d 235, 240 (Tex. Crim. App.
2009) (citing Moreno v. State, 858 S.W.2d 453 (Tex. Crim. App. 1993)).
“It is critical that there is a direct or logical connection between the actual
evidence and the proposition sought to be proved.” Id.

Analysis

During trial, the following exchange took place, when
defense counsel was questioning appellant’s daughter:

[Defense Counsel]: Do you remember—do you recall your
grandfather’s funeral.

 

[Witness]:  Yes.

 

[Defense Counsel]: 
And was [sic] there some plans for y’all to come down and spend the
night here?

 

[Witness]:  Yes.

 

[Defense Counsel]: 
And what was your response to that?

 

[Witness]:  At first,
I wanted to; and then we discussed it a little bit more; and it was best that
we didn’t stay, that we just go straight back.

 

[Defense Counsel]: And why was that?

 

[Witness]:  Because my
mother smoked pot, and I didn’t want my four-year-old around it.

 

[Prosecutor]: 
Objection. Relevance.

 

[Trial Court]: 
Sustained.

 

          The trial court then instructed the
jury to disregard the witness’s response. 
Appellant made no offer of proof other than the testimony of appellant’s
daughter, which was subsequently struck.

Appellant argues that the evidence of the complainant’s
drug use was relevant to show that appellant was not lying when he told
officers that the complainant was “high on grass” when he shot her. The State
responds that the evidence offered was not relevant because it did not pertain
to the time of the shooting.  We agree
with the State.

The issue presented was whether the
complainant was high on marijuana at the time she was shot and/or whether
appellant lied when he gave that information to the police.  However, the only evidence appellant offered
was testimony that appellant’s daughter would not stay with them after her
grandfather’s funeral because of her mother’s drug use.  The record showed that the grandfather’s
funeral occurred over a month before the offense at issue.  Whether the complainant used drugs over a
month earlier would not rebut the toxicology report showing no drugs in her
system at the time she was shot.  Thus,
we cannot say the trial court abused its discretion in finding the evidence
irrelevant.  See Turner v. State, 762 S.W.2d 705, 707–08 (Tex. App.—Houston
[14th Dist.] 1988, pet. ref’d) (holding that witness cannot be impeached for
being “bad person” and witness’s prior drug use irrelevant because not related
to time of offense); see also Lopez v.
State, No. 01-06-01079-CR, 2008 WL 1904022, at *14 (Tex. App.—Houston [1st
Dist.] Oct. 1, 2008, pet. ref’d) (memo op., not designated for publication) (finding
toxicology report showing victim’s intoxication at time of offense relevant to show “facts and circumstances
surrounding killing”).

          We
overrule point of error two. 

CRIME SCENE PHOTOGRAPH

In point of error three, appellant
contends the trial court abused its discretion when it admitted a photograph of
the complainant taken at the crime scene. 
Specifically, appellant contends that, under Texas Rule of Evidence 403,
the photograph was unduly prejudicial because it depicted the complainant at
the time her body was discovered by police. 
Appellant argues that because the complainant had been dead for several
days before the body was discovered, decomposition, not appellant, caused the
damage depicted in the photograph.

Standard
of Review and Applicable Law

The admissibility of a photograph is within the sound
discretion of the trial court. Gallo v. State, 239 S.W.3d 757, 762 (Tex.
Crim. App. 2007). Generally a photograph is admissible if verbal testimony as
to matters depicted in the photographs is also admissible. Id. 

Texas Rule of Evidence 403 allows a trial court to exclude
otherwise relevant evidence when the probative value of the evidence “is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury. . . .” Tex.
R. Evid. 403; see also Erazo v. State, 144 S.W.3d 487, 489 (Tex. Crim.
App. 2004). We review the trial court’s admission of photographs into evidence
under an abuse of discretion standard, and we will not reverse the trial court’s
ruling unless it falls outside the zone of reasonable disagreement. See
Resendiz v. State, 112 S.W.3d 541, 544 (Tex. Crim. App. 2003); see also
Wyatt v. State, 23 S.W.3d 18, 29 (Tex. Crim. App. 2000). However, we must
do more than decide whether the trial court conducted the required balancing
analysis between probative and prejudicial values. Shuffield v. State,
189 S.W.3d 782, 787 (Tex. Crim. App. 2006). We must determine that the trial
court’s ruling is reasonable in view of all the relevant facts. Id.

When reviewing the trial court’s ruling admitting
photographic evidence to which objection has been made under Rule 403, we must
consider the form, content, and context of the photographs.  Erazo, 144 S.W.3d at 492 (citing Narvaiz
v. State, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992)).  We must use the following factors when conducting
a Rule 403 analysis: (1) the probative value of the evidence; (2) the potential
to impress the jury in some irrational, yet indelible, way; (3) the time needed
to develop the evidence; and (4) the proponent’s need for the evidence. Id.
at 489 (citing Montgomery v. State, 810 S.W.2d 372, 389–90 (Tex. Crim. App.
1990)). We also consider the factors set out in Narvaiz, namely, the
number of photographs, the size of the photographs, whether the photographs are
in black and white or in color, whether the photographs are gruesome, whether a
body is shown in the photographs clothed or naked, and whether the body has
been altered by an autopsy. Id. at 489; Narvaiz, 840 S.W.2d at
429.  Photographs depicting matters
described by admissible testimony are generally admissible. Erazo, 144
S.W.3d at 489.

“If a photograph is competent, material and relevant to the
issue on trial, it is not rendered inadmissible merely because it is gruesome
or might tend to arouse the passions of the jury, unless it is offered solely
to inflame the minds of the jury.” Id. The probative value of a color
photograph or a videotape depicting the recovery of a murder victim’s body may
outweigh its prejudicial effect even when the depiction includes close-ups and
lingering camera angles, so long as the images simply reflect the gruesomeness
of the offense. See Ripkowski v. State, 61 S.W.3d 378, 392 (Tex. Crim. App.
2001). 

Analysis

          1. Probative Value

Here, the crime scene photo is relevant because it
accurately reflects the location and state of the complainant’s body when it
was discovered and the injuries inflicted on it.  See id. Such depictions give the photos substantial probative value. Id.
The crime scene photograph of the complainant’s body
supports testimony that the complainant was shot in the face while lying in
bed. The decomposition of the body supports testimony as
to the date and circumstances of the crime.

We conclude that the crime scene photos
had probative value.  Id.

2) Potential to Impress Jury in
Irrational, Indelible Way

A photograph is not rendered inadmissible merely because it
is gruesome or might tend to arouse the passions of the jury, unless it is
offered solely for the purpose of inflaming the minds of the jury. Potter v.
State, 74 S.W.3d 105, 112 (Tex. App.—Waco 2002, no pet.); Ward v. State,
787 S.W.2d 116, 120 (Tex. App.—Corpus Christi 1990, pet. ref’d). 

While the crime scene photo in this case makes an indelible
impression, it does not depict more than the nature of the crime. See Ripkowski,
61 S.W.3d at 392. The crime scene photo shows the nature of the crime and the
nature of the wounds inflicted on the complainant. The fact that decomposition
of the body had begun does not mean that the photograph depicted more than the
nature of the crime.  See Jones v. State, 843 S.W.2d 487, 501
(Tex. Crim. App. 1992) (holding photographs of charred body not unduly
prejudicial because they were few in number, showed wounds inflicted on victim,
location and position in which body was discovered, and were subject of
testimony at trial); Fields v. State,
No. 01-07-00856-CR, 2009 WL 723992, *5 (Tex. App.—Houston [1st Dist.] 2009,
pet. ref’d (memo op., not designated for publication) (holding admission of
photograph of decomposed body not unduly prejudicial under rule 403).  The image does not simply appeal to the jury’s
emotion to lead the jury to make an irrational verdict. See Erazo, 144
S.W.3d at 494–95. The photo is, therefore, unlikely to render the jury
irrational and incapable of making a sober assessment of the facts. Id.
at 495. 

(3) Time Needed to Develop Evidence

Only one crime scene photograph was introduced and very
little time was needed to develop the evidence.

(4) Proponent’s Need for Evidence

Appellant argues that because he did
not contest shooting the complainant, the State did not need the crime scene
photograph.  However, the Texas Court of
Criminal Appeals has determined that even an offer to stipulate
to the cause of death of a victim does not preclude admission of photographs demonstrating the cause and does not render them
less probative. Newbury v. State, 135 S.W.3d 22, 43-44 (Tex. Crim. App. 2004)
(finding autopsy photographs admissible over offer to stipulate to means of death as gunshot wound).  We have already discussed the relevance of
the photograph to show the facts and circumstances of the crime and to show the
crime scene as it was discovered by police.

          (5)
Narvais factors



We also consider the number of photographs, the size of the
photographs, whether the photographs are in black and white or in color,
whether the photographs are gruesome, whether a body is shown in the
photographs clothed or naked, and whether the body has been altered by an
autopsy.  Narvaiz, 840 S.W.2d at
429.

Here, the State offered a single crime scene photograph and
no autopsy photographs.  The picture is
in color, the body is covered by a blanket except for the face, and the body
has not been altered in any way, but depicts the scene of the crime as it
existed when discovered by police. 
Although some decomposition is apparent in the photograph, such
decomposition is a direct result of appellant’s shooting the complainant in the
face several times and then leaving the body to be discovered several days
later.

After considering the above, we cannot say that the trial
court abused its discretion in admitting the single crime scene
photograph.  Accordingly, we overrule
point of error three.

ADMONISHING APPELLANT TO ANSWER RESPONSIVELY

In point of error four, appellant
contends the trial court erred when it admonished appellant to respond to the
State’s leading questions on cross-examination with a “yes” or “no”
answer.  Such admonition, appellant
contends, violated his right to due process under the Fourteenth Amendment.

During the punishment phase, the
following exchange took place during the State’s cross-examination of
appellant:

[Appellant]:  Like I said, I was not paying attention to
time.

 

[Prosecutor]:  Okay. 
But you remembered enough to write that in your written statement:  Is that right?

 

[Appellant]:  Well, in my state of mind last year —

 

[Trial Court]:  Mr. McGhee, listen to the question.  He’s not asking you to explain anything.  Just listen to his question and answer it. 

Several questions later,
appellant was asked:

 

[Prosecutor]:  You weren’t allowed in Nancy’s bed that
night:  were you?

 

[Appellant]:  That was by mutual agreement.

 

After appellant’s unresponsive
answer, the trial court had the jury removed from the courtroom, and the
following exchange took place:

[Trial Court]:  Mr. McGhee, I’ve already called you down
once.  This will be the last time.  What part of “You weren’t allowed in the bedroom
that night” did you answer?

 

[Appellant]:  I thought I gave an answer, sir.

 

[Trial Court]:  What part of that question asks you for was
there an agreement, was it a mutual agreement?

 

[Appellant]:  There was none.

 

[Trial Court]:  None. That was a yes-or-no question; wasn’t
it?

 

[Appellant]:  Yes, sir.

 

[Trial Court]:  And you didn’t answer it that way; did you?

 

[Appellant]:  No, sir.

 

[Trial Court]:  Okay. 
Listen to the question and answer the question and only the
question.  Don’t add anything to it.  Don’t editorialize.  Don’t say what you think you want to say, in
spite of the question that’s being asked. 
That’s not the way this process works. 
You have a fine attorney over here in Mr. Buddy Stevens.  He knows how to ask questions that need to be
asked for your defense.

 

[Appellant]:  Yes, sir.

 

[Trial Court]:  You’re not representing yourself.

 

[Appellant]:  I —

 

[Trial Court]:  If you choose to do that, we can make the
arrangements to continue.  That’s up to
you.  But while you’re up here on the
stand, you’re going to answer the questions that either side is asking you and
only answer those questions.  If somebody
asks you what time it is, don’t begin to tell us how the clock is built.  Do you understand that?

 

[Appellant]:  Yes, sir, I understand.

 

[Trial Court]:  We won’t have this conversation again.  Will we?

 

[Appellant]:  No, sir.

 

[Trial Court]:  Are you going to answer just the questions?

 

[Appellant]:  Yes, sir.

 

[Trial Court]:  Thank you. 
Put them in the box, Charley.

(The jury returned to the
courtroom).

 

Appellant argues that nothing in
Texas law requires a witness to respond to a leading question with a “yes” or
“no” answer, and that “a ‘yes’ or ‘no’ answer is frequently not adequate to
truthfully answer the question or adequately convey the truth of the
situation.”  Appellant argues that by so
limiting appellant’s answers, he was denied his constitutional right to present
his version of the facts.  The State
responds that error, if any, was waived by appellant’s failure to object. 

Appellant, citing Webb v. Texas, 409 U.S. 95, 96 (1972),
argues that no objection was necessary. 
We find Webb
distinguishable.  In that case, the trial
court excused the jury, and then admonished the sole defense witness, a
convicted felon who was serving time in prison, about the dangers of perjury as
follows:

If you take the witness stand and lie under oath, the Court
will personally see that your case goes to the grand jury and you will be
indicted for perjury and the likelihood (sic) is that you would get convicted
of perjury and that it would be stacked onto what you have already got, so that
is the matter you have got to make up your mind on. If you get on the witness
stand and lie, it is probably going to mean several years and at least more time
that you are going to have to serve. It will also be held against you in the
penitentiary when you're up for parole and the Court wants you to thoroughly
understand the chances you’re taking by getting on that witness stand under
oath.



Webb, 409 U.S. at 96.  The
appellant then objected, arguing that the trial court’s comments were “exerting
on the mind of the witness such duress that the witness could not freely and
voluntarily decide whether or not to testify in the petitioner’s behalf, and
was thereby depriving the petitioner of his defense by coercing the only
defense witness into refusing to testify.” 
Id.  On appeal, the State argued that the
objection was untimely because it was not made until after the trial court
completed its admonition. Id. at 97.
The Supreme Court disagreed, holding that there was no need for counsel to have
interrupted the trial court’s admonition with an objection, and that it was
apparent from the record that the trial court had, in fact, intimidated the
defense’s only witness into refusing to testify, a violation of the defendant’s
due process rights.  Id. at 97–98.  The Supreme Court did not hold that no
objection was necessary, only that the objection made when the consequences of
the judge’s remarks became evident, i.e., when the witness refused to testify,
was sufficient.  Id.

           In Webb,
the defense counsel objected after the trial court concluded its
admonition.  Here, appellant made no
objection at all to the trial court’s comments. 
The failure to raise a contemporaneous objection resulted in a failure
to preserve the error for appellate review.  See Tex.
R. App. P. 33.1(a); See Brewer v. State, 572 S.W.2d 719,
721 (Tex. Crim. App. 1978) (explaining that when no objection is made, remarks
and conduct of the court may not be challenged on appeal unless they are
fundamentally erroneous); see also Blue v. State, 41 S.W.3d 129 (Tex. Crim.
App. 2000) (plurality) (holding that comments of trial judge, which tainted
defendant’s presumption of innocence, were fundamental error of constitutional
dimension and required no objection). 
There being no fundamental or constitutional error in this case, if any error
at all, appellant was required to object, which he did not do.  Therefore, the issue is waived.

We overrule point of error four.

REFUSING TO PERMIT EXPERT TESTIMONY

In points of error five and six,
appellant contends the trial court erred by excluding testimony by a
psychiatric expert regarding whether (1) appellant was a man of “ordinary
temper” and (2) whether appellant “snapped.”

 

Standard
of Review and Applicable Law

We review the exclusion of an expert witness under an abuse of discretion standard. Kelly v. State, 824 S.W.2d 568,
574 (Tex. Crim. App. 1992).  An abuse of
discretion occurs when the trial court acts without reference to any guiding
rules and principles or acts arbitrarily or unreasonably. Montgomery v.
State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). However, if the trial
court’s decision to admit or exclude the expert testimony is “within the zone
of reasonable disagreement,” it does not abuse its discretion. See Kelly,
824 S.W.2d at 574.
          For
expert testimony to be admissible, the proponent must show that the testimony offered is sufficiently relevant and reliable to
assist the jury in accurately understanding other evidence or in determining a
fact in issue. See Tex. R. Evid.
702; Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  In other words, the expert’s knowledge and
experience on a relevant issue must be shown to be beyond that of the average
juror, and it must be shown that his testimony will help the jury understand
the evidence or determine a fact issue.  See
Duckett v. State, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990), overruled
on other grounds, Cohn v. State, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993).
When the jury is equally competent to form an opinion about an ultimate fact
issue, or the expert’s testimony is within the common knowledge of the jury,
the trial court should exclude the expert’s testimony. Duckett, 797
S.W.2d at 914; Heidelberg v. State, 36 S.W.3d 668, 676 (Tex. App.—Houston
[14th Dist.] 2001, no pet.). 

Testimony regarding
“ordinary temper”

During the punishment
phase, the jury was charged the following:

 

Now, the Court having found the defendant guilty of the
offense of Murder, you must determine by a preponderance of the evidence
whether or not the defendant caused the death under the immediate influence of
sudden passion arising from an adequate cause.

 

See Tex.
Penal Code Ann. § 19.02(d) (Vernon 2003). The jury answered that it did
not find that appellant caused the complainant’s death under the immediate
influence of sudden passion arising from adequate cause.  “Adequate cause” means cause that “would
commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool
reflection.” Id. § 19.02(a)(1) (emphasis added).

At punishment, appellant called Dr.
Michael Alan Fuller, a psychiatrist on staff at the University of Texas Medical
Branch in Galveston.  Dr. Fuller had
interviewed appellant on four occasions for a total of four to eight
hours.  During appellant’s direct
examination of Dr. Fuller, the following exchange took place:

[Defense Counsel]:  Doctor, in your discussion of Mr. McGhee, did
you find him to be a mild-mannered person?

 

[Prosecutor]:  Objection, Your Honor.  Not relevant, and it’s characterization of
the defendant.

 

[Defense Counsel]:  Judge, I think—my point is that we’re trying
to follow the instruction that the Court will later may be given to the jury,
and I’m trying to lead up to that, Judge.

 

[Trial Court]:  I’m going to sustain that question—excuse
me—sustain that objection to that question

 

[Defense Counsel]:  Did—in your discussion with Mr. McGhee, did
you find him a person of ordinary temper, sir?

 

[Witness]:  Of ordinary—

 

[Defense Counsel]: Temper.

 

[Prosecutor]:  Your Honor. 
I’m going to object.  I don’t know
that he’s described in any way what an ordinary temper is.  I don’t know how that’s helpful to the jury.

 

[Defense Counsel]:  That will be part of the instructions that
the jury—that the Court may ask the jury, Judge.

 

[Trial Court]:  Not that question.

 

[Defense Counsel]:  Well, that’s part of a definition,
Judge.  If, without saying where I’m
going—

 

[Trial Court]:  I know where you’re going.  I know where you’re going.  I know what you’re looking at, but I’ll
sustain that objection.

 

Appellant contends that Dr.
Fuller’s testimony on this issue was relevant to show whether appellant was a
man of “ordinary temper.”  We
disagree.  This issue of ordinary temper
as it relates to “adequate cause” is an objective one.  See
McCartney v. State, 542 S.W.2d 156, 160 (Tex. Crim. App. 1976) (“[T]he jury
must place the ordinary man in the defendant’s situation.”).  Thus, the issue is not whether appellant is a
man of ordinary temper; the issue is how the objectively reasonable man would
react if placed in appellant’s situation. 
Therefore, the trial court did not err in excluding, on relevancy
grounds, the expert’s testimony regarding whether appellant was a man of
ordinary temper.

We overrule point of error five.

Testimony
regarding whether appellant “snapped”

          In
appellant’s confession, appellant stated that after the complainant called him
a “sucker” for helping her with her car troubles, he “just lost it for a short
time,” got his pistol, and shot her.  At
punishment, on direct examination, the following exchange occurred:

[Appellant]:  I went outside and got my pistol and came back
in.

 

[Defense Counsel]:  Did you even think about what you were doing,
sir?

 

[Appellant]:  I just snapped.  I just totally snapped.

 

On
cross examination, appellant testified as follows:

 

[Prosecutor]:  Why didn’t you just leave?

 

[Appellant]:  Like I said in a previous statement, I just
snapped.

 

          Appellant’s
expert, Dr. Fuller, testified that when a person “snaps” there is “a flood of
anger, rage, the hormonal . . . the hormones associated with that, that result
. . . in a person briefly losing self-control.” 
Defense counsel then attempted to question Dr. Fuller about whether
appellant had “snapped.”

[Defense Counsel]:  In your interviews with Randy McGhee, did you
find anything that would suggest that he did not snap when this occurred?

 

[Prosecutor]:  I’m going to object, Your Honor.  I don’t—I’m going to object to relevant and
to an improper foundation for that question.

 

[Trial Court]: Sustained.

 

          Appellant
contends the excluded evidence was relevant to whether he was acting under the
influence of sudden passion at the time he shot the complainant.  The State responds that Dr. Fuller’s
testimony regarding whether appellant “snapped” is inadmissible because it
attempts to show appellant’s state of mind at the time of the shooting,
something that only appellant could know. 
We agree.

Texas courts have repeatedly excluded expert
testimony regarding a defendant’s state
of mind or intent at the time of the offense because it
is speculative and unreliable.  See Fairow v. State, 943 S.W.2d 895, 899
(Tex. Crim. App. 1997) (“It is impossible for a witness to possess personal
knowledge of what someone else is thinking. The individual is the only one who
knows for certain the mental state with which he is acting. Therefore, if the
trial court determines that a proffered lay-witness opinion is an attempt to
communicate the actual subjective mental state of the actor, the court should
exclude the opinion because it could never be based on personal knowledge.”)
(internal citation omitted);  Arnold
v. State, 853 S.W.2d 543, 547 (Tex. Crim. App. 1993); Jackson v. State,
548 S.W.2d 685, 692-93 (Tex. Crim. App. 1977); Winegarner v. State, 505
S.W.2d 303, 305 (Tex. Crim. App. 1974);  Avila
v. State, 954 S.W.2d 830, 839 (Tex. App.—El Paso 1997, pet. ref’d); Osby
v. State, 939 S.W.2d 787, 790 (Tex. App.—Fort Worth 1997, pet. ref’d); Whitmire
v. State, 789 S.W.2d 366, 372 (Tex. App.—Beaumont 1990, pet. ref’d).

      Because
appellant’s questions attempted to have Dr. Fuller testify about appellant’s
state of mind at the time of the accident, the trial court did not err in
sustaining the State’s relevancy objection and excluding the evidence.[1]

      We overrule point
of error six.

 

 

 

CONCLUSION

      We affirm the judgment of the trial court.

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Bland and Sharp.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           We
note that article 38.36(b) of the Code of
Criminal Procedure authorizes admission of “relevant expert testimony regarding
the condition of the mind of the defendant at the time of the offense” if the
defendant had been a victim of family violence and if the defendant raised the
issue of self-defense or defense of another. Tex.
Code  Crim. Proc. Ann. art.
38.36(b).  Appellant had not been the
victim of family violence, thus article 38.36(b) is not applicable.